# IN THE COURT OF APPEALS OF IOWA

No. 16-0029
Filed August 17, 2016

**IN THE INTEREST OF T.K.,**
**Minor Child,**

**S.J., Mother,**
     Petitioner-Appellee,

**C.S., Father,**
     Respondent-Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Craig M.

Dreismeier, District Associate Judge.


A father appeals the termination of his parental rights. **AFFIRMED.**



Te'ya T. O'Bannon of O'Bannon Law, P.C., Council Bluffs, for appellant.

Sara E. Benson of Benson Law, P.C., Council Bluffs, for appellee.

Mandy L. Whiddon of Whiddon Law, Council Bluffs, for minor child.



Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**DANILSON, Chief Judge.**

The father appeals from the order terminating his parental rights to his child, T.K. He contends he did not abandon the child within the meaning of Iowa Code section 600A.8(3)(b) (2015), he was prevented from maintaining contact with the child, and termination is not in the child's best interest. Because the father did not maintain substantial and continuous contact with the child and was not prevented from doing so, we affirm.

## I. Background Facts and Proceedings.

T.K. was born in 2008 when the mother and father were in high school. The mother and father ended their relationship shortly after T.K.'s birth. For the first three years of T.K.'s life, the father maintained sporadic visitation with T.K. The mother testified there were periods of time when the father visited T.K. every week, and other periods where visits would occur about once a month. The father never provided overnight care for the child. The father also never contributed food, clothing, diapers, formula, or other necessities. The father did not provide financial support other than ten dollars in child support each month.

Sometime after T.K.'s third birthday, visitation with the father ended. The father had no contact with T.K. until approximately four years later in September 2015, when the father called T.K. at school. The father testified T.K. remembered who he was, but the mother testified T.K. believed he was talking to the mother's husband, whom T.K. calls "dad." The mother's husband has expressed a desire to adopt T.K. should the father's rights be terminated.

The mother filed the petition for termination on September 15, 2015, asserting the father had abandoned the child within the meaning of Iowa Code

section 600A.8(3)(b). The juvenile court agreed, and entered an order terminating the father's parental rights on December 9, 2015. The father appeals.

## II. Standard of Review.

We review termination proceedings under chapter 600A de novo. *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010). "We give deference to the factual findings of the juvenile court, especially those relating to witness credibility, but we are not bound by those determinations." *In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). Our paramount consideration is the best interest of the child. Iowa Code § 600A.1.

## III. Analysis.

Iowa Code section 600A.8(3)(b) provides a child older than six months is deemed abandoned

> unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

*A. Substantial and Continuous or Repeated Contact.* The father did not maintain regular visitation or communication with the child. The juvenile court concluded,

> [The father]'s lack of involvement with T.K. evinces abandonment. While testimony supports that [the father] had consistent visitation for the first three years of T.K.'s life, [the father] has not physically

seen his [child] since 2012.  He has had no other contact via phone or electronic media with T.K. nor with his mother.  He has failed to act in a parental role since 2012.

The father contends the mother prevented him from maintaining continuous contact by blocking all means of communication.  The father made some attempts to contact the mother through electronic means—by texting, Facebook, and cell phone.  However, the mother had moved a couple of times and had changed her cell phone number.  The father was also blocked from the mother's Facebook until about six months before the termination hearing.[1]

However, the father was aware of the mother's parents' home address, place of employment, and telephone number.  The father never personally called the mother's parents, visited their home, or attempted to leave gifts or financial support for T.K. with the mother's parents.  For three years, from 2012 until 2015, neither the father nor anyone on his behalf contacted the mother's parents for information related to the child's whereabouts or how to contact the mother.  The father claimed that he was frightened to go to the mother's parents' home, but admitted his relationship with the mother's parents did not end badly.  There was also no evidence the mother ever moved from the same city where the father resided.  We conclude the father's attempts to remain in contact with T.K. were feeble at best.  We also note the father never filed an action seeking custody or visitation.

---

[1] The mother acknowledged she blocked the father from her old Facebook page because the father left harassing messages.

The mother was not required to encourage the father to maintain contact with T.K.,[2] and the father's actions did not reflect a meaningful effort to be involved in T.K.'s life. *See id.* § 600A.8(3)(c) ("The subjective intent of the parent, whether expressed or otherwise, unsupported by evidence of acts specified in paragraph 'a' or 'b' manifesting such intent, does not preclude a determination that the parent has abandoned the child.").

*B. Reasonable Support.* The father also did not contribute to the support of T.K. in a reasonable amount. The father was current on his ordered child-support payments of ten dollars a month, but acknowledged in his testimony ten dollars a month is well below the amount needed to financially support a child. Reasonable support for purposes of section 600A.8(3)(b) is not limited to court-ordered support. *See In re W.W.*, 826 N.W.2d 706, 710 (Iowa Ct. App. 2012). Ten dollars a month does not constitute contribution of a reasonable amount to the support of T.K. as required by section 600A.8(3)(b) even if the father was not fully employed at all times during the child's life.

We affirm the juvenile court's holding that the clear and convincing evidence shows the father abandoned T.K. pursuant to section 600A.8(3)(b).

*C. Best Interest.* The father also asserts termination of his parental rights is not in T.K.'s best interest. Iowa Code section 600A.1 provides:

> The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations,

---

[2] *See* Iowa Code § 600A.8(3)(c) ("In making a determination, the court shall not require a showing of diligent efforts by any person to encourage the parent to perform the acts specified in paragraph 'a' or 'b.'").

demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

The father did not assume any of the parental duties listed in section 600A.1. The father did not contribute reasonable financial support or attempt to provide gifts or cards to T.K. in the four years following T.K.'s third birthday. Even before the father lost communication with the mother, he did not contribute food, clothing, or other items needed to care for T.K. and did not make an effort to spend more than minimal time with T.K. The father did not make a genuine effort to maintain communication or demonstrate an interest in T.K. After T.K.'s third birthday, the father had no contact with T.K. at all. The record reflects the mother's husband has played a large role in supporting and raising T.K., the child knows only the mother's husband as his father, and the mother's husband desires to adopt T.K. There is also no evidence of a parent-child bond between the father and the child.

We agree with the juvenile court that termination of the father's parental rights is in T.K.'s best interest and will allow T.K. to achieve permanency in his life.

**IV. Conclusion.**

We find the father abandoned the child within the meaning of section 600A.8(3)(b), the father was not prevented from maintaining meaningful contact with the child, and termination of the father's parental rights is in the child's best interest. We therefore affirm the termination of the father's parental rights.

**AFFIRMED.**